13-810-cr (L)
United States v. Peterson

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 25th day of March, two thousand fourteen.

Present:    ROBERT A. KATZMANN,
                      *Chief Judge*,
            JOSÉ A. CABRANES,
                      *Circuit Judge*,
            RICHARD M. BERMAN,
                      *District Judge*.*

_____

UNITED STATES OF AMERICA,

                *Appellee*,

      v.                                        Nos. 13-810-cr (Lead)
                                                    13-818-cr (Con)
JAMES PETERSON,

                *Defendant-Appellant*,

DEAN SMALLS,

                *Defendant*.

_____

For Appellee:                    ANDREA L. SURRATT, Assistant United States Attorney
                                 (Damian Williams and Justin Anderson, Assistant United
                                 States Attorneys, *on the brief*), *for* Preet Bharara, United States

_____

    * The Honorable Richard M. Berman, United States District Judge for the Southern District of New York, sitting by designation.

Attorney for the Southern District of New York,
New York, NY.

For Defendant-Appellant:        JOHN F. KALEY, Doar Rieck Kaley & Mack, New York, NY.

Appeal from the United States District Court for the Southern District of New York (Engelmayer, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED,**

and **DECREED** that the judgment of the district court be and hereby is **AFFIRMED**.

Defendant-Appellant James Peterson appeals from a judgment of criminal conviction and a judgment revoking his term of supervised release, both entered on February 28, 2013, by the United States District Court for the Southern District of New York (Engelmayer, *J.*). After a bench trial on stipulated facts, the court found Peterson guilty on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and subsequently found that Peterson had violated the terms of his supervised release by possessing a firearm. The court sentenced Peterson principally to fifty-seven months in prison on the criminal conviction, and an additional twelve months in prison on the supervised release violation (to be served consecutively). Peterson now appeals, claiming that both judgments should be vacated because the firearm at issue was discovered in violation of his Fourth Amendment rights. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, which we recount only as necessary to explain our decision.

Peterson challenges the district court's denial of his motion to suppress the firearm, a decision that we review for "clear error as to the district court's factual findings, viewing the evidence in the light most favorable to the government, and *de novo* as to questions of law." *United States v. Getto*, 729 F.3d 221, 227 (2d Cir. 2013) (quoting *United States v. Voustianiouk*, 685 F.3d 206, 210 (2d Cir. 2012)).

2

The facts are largely undisputed. At about 4:00 AM on February 20, 2012, the New York Police Department (NYPD) received a 911 call. The 911 caller reported that he had been in an altercation with another man, and that the other man was outside his apartment building and might have a gun. The 911 caller told the 911 operator his name, his address and apartment number, and his telephone number.

The 911 operator relayed the caller's report to the police dispatcher, who in turn radioed two NYPD officers in the area. The radio message from the dispatcher to the officers was recorded. That recording begins as follows:

> **Dispatcher:** Dispute with a firearm. 739 East 182, 739 East 182 Clinton and Prospect. Male caller states male's in front of the location with a gun on him. He didn't visually see the gun, but the person said he had one. Male black, du rag, black coat, wearing all black. The complainant is in apartment [redacted] on the [redacted] floor.
>
> **Officer:** [Unintelligible.]
>
> **Dispatcher:** 10-4.
>
> **Officer:** [Unintelligible.]

A. 143-44 (footnote omitted). The officers proceeded to the address given in the radio message, where they found Peterson, matching the description given by the dispatcher. They stopped and frisked Peterson, and found a loaded firearm tucked into his waistband at the small of his back.

Peterson moved to suppress the firearm, claiming that the officers lacked reasonable suspicion to justify the stop and frisk. The district court held a hearing, at which the officers testified that they recalled hearing the dispatcher report a dispute involving a firearm, the location of the dispute, and the description of the suspect. One officer testified that those were the only things he heard from the dispatcher. Neither officer testified to hearing the dispatcher give the apartment number in which the complainant was located, although neither officer was specifically asked about that part of the dispatcher's message.

3

In denying the motion to suppress, the district court found that the officers had heard all of the first transmission by the dispatcher, including the fact that the complainant was in a particular apartment. It noted that the final sentence about the complainant's location was transmitted immediately after the description of the suspect, which both officers testified to hearing. It also noted that both officers were apparently in the vehicle for the entire transmission, and that there was no evidence to indicate that the transmission had been interrupted. Having found that the officers heard the dispatcher say the complainant was in a particular apartment, the district court determined that the officers had reasonable suspicion justifying the stop, and so denied the motion to suppress.

Peterson moved for reconsideration of the district court's decision, which the court denied. It recognized that at least one officer had literally testified that he did not hear anything other than the report of a dispute involving a firearm, the location of the dispute, and the suspect's description; however, it determined that the officers' testimony reflected only what they remembered hearing. It inferred that the officers had remembered the most salient details about the dispatcher's message—the location involved, the description of the suspect, and the report of a firearm—but had forgotten the additional information regarding the complainant's location. The district court therefore reiterated its conclusion that the officers had heard the entire first transmission from the dispatcher in accordance with the recording.

On appeal, Peterson argues that the district court clearly erred in finding that the officers heard the dispatcher say that the complainant was in a particular apartment. "A [factual] finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

4

*United States v. Ferguson*, 702 F.3d 89, 93 (2d Cir. 2012) (quoting *United States v. Sash*, 396 F.3d 515, 521 (2d Cir. 2005)). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

We see no clear error in the district court's finding. The recording of the radio transmission shows that the dispatcher did indeed inform the officers that the complainant was in a particular apartment. Given that evidence, the district court could permissibly infer that the officers simply forgot, in the six months between the stop itself and the suppression hearing, that they had heard the complainant's location. That explanation is at least as plausible as Peterson's alternate explanation—namely, that the officers were so focused on driving to the scene that they never heard the dispatcher give the apartment number where the complainant could be found. We will not disturb the district court's choice between these two permissible views of the facts. *See Anderson*, 470 U.S. at 574.

Peterson also argues that even assuming the officers heard the dispatcher state the apartment number where the complainant was located, the officers still lacked reasonable suspicion justifying the stop and frisk. In other words, Peterson argues that even accepting the district court's factual findings, the officers lacked reasonable suspicion as a matter of law. That legal issue is subject to de novo review. *See Getto*, 729 F.3d at 227.

After careful consideration, we conclude that on the facts found by the district court, the officers had reasonable suspicion justifying their stop and frisk of Peterson. We therefore affirm

largely for the reasons given in the district court's meticulous opinion.[1]

Finally, Peterson argues that the exclusionary rule should apply in supervised release revocation proceedings. *But see Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357 (1998) (holding that the federal exclusionary rule does not apply in state parole revocation proceedings). We need not decide this issue, however; as the officers had reasonable suspicion to justify their stop and frisk, no Fourth Amendment violation occurred here, and so there is no reason to exclude the firearm in either the criminal case or the revocation hearing.

We have considered Peterson's remaining arguments and find they lack merit. For the reasons given above, we **AFFIRM** the judgments of the district court.

> FOR THE COURT:
> CATHERINE O'HAGAN WOLFE, CLERK

---

[1] The district court decided Peterson's suppression motion before we issued our opinion in *United States v. Freeman*, 735 F.3d 92 (2d Cir. 2013). *Freeman* held that although "an anonymous 911 call reporting an ongoing emergency is entitled to a higher degree of reliability and requires a lesser showing of corroboration than a tip that alleges general criminality," *id.* at 100 (quoting *United States v. Simmons*, 560 F.3d 98, 105 (2d Cir. 2009)), a report of a person "possibly armed with a firearm" and "arguing with a female" does not qualify as a report of an ongoing emergency, *id.* at 94, 100-01. We need not decide whether the circumstances in this case present an "ongoing emergency" within the meaning of *Freeman* and *Simmons*. Even assuming that the officers were not responding to an ongoing emergency, the district court correctly concluded that the information available to the officers carried sufficient indicia of reliability to provide reasonable suspicion.