18-3074-cr (L)
*United States v. Hunter et al.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20ᵗʰ day of April, two thousand twenty-two.

PRESENT:   JOSÉ A. CABRANES,
                     REENA RAGGI,
                              *Circuit Judges,*

                     EDWARD R. KORMAN,
                              *District Judge**

---

UNITED STATES OF AMERICA,

                              *Appellee,*

                     v.

JOSEPH MANUEL HUNTER, AKA SEALED DEFENDANT 1, AKA FRANK ROBINSON, AKA JIM RIKER, AKA RAMBO, AKA JOSEPH HUNTER, CARL DAVID STILLWELL, AKA DAVID STILLWELL, ADAM SAMIA, AKA SAL, AKA ADAM SAMIC,

                              *Defendants – Appellants,*

18-3074-cr (L)
18-3489-cr (Con)
19-790-cr (Con)

---

* Judge Edward R. Korman, of the United States District Court for the Eastern District of New York, sitting by designation.

MICHAEL FILTER, AKA SEALED DEFENDANT 2, AKA PAUL, TIMOTHY VAMVAKIAS, AKA SEALED DEFENDANT 3, AKA TAY, DENNIS GOGEL, AKA SEALED DEFENDANT 4, AKA DENNIS GOEGEL, AKA NICO, SLAWOMIR SOBORSKI, AKA SEALED DEFENDANT 5, AKA GERALD,

*Defendants.*

| | |
|---|---|
| **FOR APPELLEE:** | EMIL J. BOVE III (Rebekah Donaleski and Sarah K. Eddy, *on the brief*), Assistant United States Attorneys *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, NY. |
| **FOR DEFENDANT-APPELLANT HUNTER:** | ROBERT J. BOYLE (Andrew Patel, *on the brief*), New York, NY. |
| **FOR DEFENDANT-APPELLANT SAMIA:** | MASHA G. HANSFORD (Aimee W. Brown, Kannon K. Shanmugam, *on the brief*), Paul, Weiss, Rifkind, Wharton & Garrison LLP, Washington D.C. |
| **FOR DEFENDANT-APPELLANT STILLWELL:** | ROBERT W. RAY (Brittney M. Edwards, Thompson & Knight LLP, *on the brief*), Zeichner Ellman & Krause, LLP, New York, NY. |

Appeal from judgments of the United States District Court for the Southern District of New York (Ronnie Abrams, *Judge*) entered on October 12, 2018, and November 14, 2018, and March 25, 2019, and an order entered October 15, 2018.

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments and orders of the District Court be and hereby are **AFFIRMED IN PART AND VACATED AND REMANDED IN PART**.

Defendants-Appellants Joseph Manuel Hunter, Carl David Stillwell, and Adam Samia (together, "Defendants") were tried jointly on five Counts.[1] Count One charged conspiracy to commit murder-for-hire, in violation of 18 U.S.C. § 1958(a). Count Two charged murder-for-hire, in violation of 18 U.S.C. § 1958(a). Count Three charged conspiracy to murder and kidnap in a foreign

---

[1] Hunter was not charged with Count Five.

country, in violation of 18 U.S.C. § 956(a). Count Four charged causing death with a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(j). Count Five charged conspiracy to launder money, in violation of 18 U.S.C. § 1956(h). Defendants were convicted on all counts. Hunter filed post-trial motions pursuant to Federal Rules of Criminal Procedure 29 and 33, Stillwell filed a post-trial motion pursuant to Rule 29, and Samia joined these motions. Those motions were denied, and all Defendants were sentenced principally to life imprisonment. They appealed, and we consolidated their cases.

While the appeal was pending, we became aware that in October 2018, the Narcotic and Dangerous Drug Section ("NDDS") of the Drug Enforcement Administration ("DEA") had filed a notice with this Court advising us that the District Court had entered a sealed protective order in the case barring prosecutors from the US Attorney's Office for the Southern District of New York ("SDNY") and defense counsel from reviewing certain classified documents. That protective order had been granted pursuant to Section 4 of the Classified Information Procedures Act ("CIPA"), 18 U.S.C. app. 3 §§ 1 *et seq.*, and Federal Rule of Criminal Procedure 16(d), upon the filing of a post-trial, *ex parte* motion by an NDDS attorney, with no notice to counsel of record for any of the parties.

Following a series of orders to show cause, we vacated the District Court's protective order and ordered that the withheld materials be disclosed, first to the U.S. Attorney for the SDNY and his subordinates, and then to defense counsel. *See United States v. Stillwell*, 986 F.3d 196, 198-99 (2d Cir. 2021) ("*Stillwell*"). Defendants then raised claims before us that the withheld materials had violated their due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963). We thereupon remanded the case to the District Court with a limited mandate, to "consider the *Brady* claims in the first instance on an appropriate post-trial motion by Defendants" and to "determine whether any evidence favorable to the Defendants was material, suppressed, or both." *Stillwell*, 986 F.3d at 202. We instructed that further appeals in these cases be returned to our panel. *Cf. United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir. 1994).

The District Court denied Defendants' Rule 33 motions for a new trial following our remand and a classified hearing. *United States v. Hunter et al.*, No. 13-cr-521-RA, ECF 796 (S.D.N.Y., Dec. 28, 2021). Hunter and Stillwell appeal that denial. We address only those claims in a separate published opinion filed the same day that this order is entered. Here, we address Defendants' initial appeals from their judgments of conviction as those appeals stood prior to our remand in *Stillwell*.

We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

### I: Vacatur of Counts One, Two, and Four

At the outset, Defendants argue, and the Government agrees, that Defendants' convictions on Counts One, Two, and Four must be vacated in light of the Supreme Court's ruling in *United States v. Davis*, 139 S. Ct. 2319 (2019). Each of these counts was predicated on conspiracy to commit murder and kidnapping in violation of § 956(a)(1) being a crime of violence under ACCA's risk-of-force clause, § 924(c)(3)(B). The Supreme Court in *Davis* held that § 924(c)(3)(B) cannot be construed to apply to the particular crime charged and proved but can only be applied categorically. 139 S. Ct. at 2329–30. So applied, the Court held § 924(c)(3)(B) to be unconstitutionally vague and, therefore, "no law at all." *Id.* at 2323. Thus, the Government concedes that it can no longer rely on it to uphold Defendants' convictions on Counts One, Two, and Four. In light of this concession and in the absence of any argument distinguishing the circumstances of this case from *Davis*, we vacate Defendants' convictions on Counts One, Two, and Four, and remand for resentencing. *See United States v. Barrett*, 937 F.3d 126, 130 (2d Cir. 2019).

We next determine whether Hunter's conviction on Count Three, and Stillwell and Samia's convictions on Counts Three and Five, should be upheld on appeal. They each raise several challenges.

### II: Hunter's Challenges

*A. Motion to Suppress the "Phuket Video"*

Hunter argues that the District Court erred in denying his motion to suppress a video gathered through an operation in which the DEA and Thai authorities implanted a video recording device in a home in Phuket, Thailand. When considering a denial of a suppression motion we review findings of fact for clear error and legal questions *de novo*. *United States v. Ferguson*, 702 F.3d 89, 93 (2d Cir. 2012).

Hunter argues that the installation of the camera constituted an unreasonable search under the Fourth Amendment. The Fourth Amendment "has extraterritorial application to the conduct abroad of federal agents directed against United States citizens," *United States v. Toscanino*, 500 F.2d 267, 280-81 (2d Cir. 1974), but this only extends to the prohibition against unreasonable searches and seizures, and not the warrant requirement. *See In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 157, 171 (2d Cir. 2008) ("[W]e hold that the Fourth Amendment's Warrant Clause has no extraterritorial application"). That is, "foreign searches of U.S. citizens conducted by U.S. agents are subject only to the Fourth Amendment's requirement of reasonableness." *Id.*

Even assuming, despite significant evidence to the contrary, that the initial entry to emplace the recording device and its subsequent collection were conducted by U.S. agents, rather than the Thai police, Hunter's argument would still fail because the search was reasonable. The District Court

4

weighed Hunter's "relatively limited" privacy interest when compared to the Government's "substantial interest" in surveilling Hunter's participation in a "vast criminal enterprise responsible for, among other things, murder and narcotics trafficking." *See* Hunter App'x 188. Specifically, the District Court considered that Hunter was only a guest in the Phuket house, not a resident, only stayed for a short time, and therefore had a "relatively limited" privacy interest. *Id.* 129, 188. The District Court further observed that Thai police informed U.S. agents that the requisite Thai legal approvals were obtained for the installation of surveillance equipment.

Hunter's argument on appeal appears to be that he had a privacy interest in his *conversations* that is distinguishable from his limited general privacy interest in the guest house. This argument draws a distinction without a difference and has no basis in caselaw. The District Court *did* recognize that Hunter had some "legitimate expectation of privacy" in the residence, which covered his conversations and activities there. *Id.* 130; *see United States v. Fields*, 113 F.3d 313, 320 (2d Cir. 1997). Those interests were simply outweighed by the Government's.

In sum, there was no error, much less clear error, in the District Court's decision to admit the Phuket Video into evidence.

### B. *Motion for Severance*

Hunter argues the District Court erred by denying his motion for severance. Rulings on motions for severance under Rule 14 are "entitled to considerable deference that is virtually unreviewable." *United States v. Stewart*, 433 F.3d 273, 314 (2d Cir. 2006). Accordingly, a defendant bears an "extremely difficult burden" of demonstrating that the denial of his motion "caused substantial prejudice." *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998); *see also United States v. Diaz*, 176 F.3d 52, 103 (2d Cir. 1999) ("If the denial of the motion causes some prejudice, but less than substantial prejudice, we are not apt to reverse, since, by and large, joinder promotes judicial efficiency.") (quoting *United States v. Casamento*, 887 F.2d 1141, 1150 (2d Cir.1989)).

Hunter has not met that burden. He argues that his defense was "mutually antagonistic" with Samia and Stillwell's because (Hunter claims) Samia argued at trial that "[i]f the contents of the [Phuket Video] were true, [Hunter] was guilty and [Samia] was not guilty." Hunter Br. 59.

But Samia did not make that argument. Instead, Samia argued that the video showed that he was not guilty because in it, Hunter said certain things of his co-conspirators that Samia argues based on other evidence were untrue of himself.

Defenses are only "mutually antagonistic" and require severance where "accepting one defense requires that 'the jury must of necessity convict a second defendant.'" *United States v. Yousef*, 327 F.3d 56, 151 (2d Cir. 2003) (quoting *United States v. Cardascia*, 951 F.2d 474, 484 (2d Cir. 1991)); *cf. Cardascia*, 951 F.2d at 484-85. ("[A]n adversarial stance by a codefendant clearly does not, alone,

5

require trials to be severed. Were this true, a virtual ban on multidefendant conspiracy trials would ensue since co-conspirators raise many different and conflicting defenses."). Here, the jury had several reasonable ways of accepting Samia's defense (*i.e.*, that he could not have been the co-conspirator Hunter described in the video) but still acquitting Hunter (*e.g.*, simply disbelieving specifically what Hunter said in the video about his own role in the murder).

Moreover, Judge Abrams directed the jury to consider each Defendant's guilt separately, minimizing the risk of prejudice. Samia App'x 973 ("In your deliberations and in reaching your verdict, you must consider each count and each defendant separately.").

Separately, Hunter argues that severance was warranted because of a late Rule 16 disclosure of approximately 1,600 emails to his counsel. But as Judge Abrams explained, the quantity of emails was limited, and the disclosure was made two weeks prior to trial. Hunter App'x 122. Moreover, the Government had already produced all the marked exhibits that it intended to introduce at trial from the email accounts at issue in the late-disclosed emails, meaning the Government would not introduce *any* information from the late emails that Hunter had not previously had access to as a disclosed exhibit. *Id.*; *see United States v. Lee*, 834 F.3d 145, 160 (2d Cir. 2016) ("[Defendant] does not explain how his defense strategy would have changed had he known about the . . . [evidence] sooner, other than to assert that it would have been different. [He] thus has not demonstrated that the late timing of the disclosure . . . affected his trial strategy, which could in turn show substantial prejudice.").

In sum, the District Court did not err in denying Hunter's severance motion.

III: Samia's Challenges

*A. Denial of Rule 807 Motion*

Samia challenges the District Court's denial of his motion to admit hearsay evidence under Rule 807 of the Federal Rules of Evidence. "[W]e review a district court's evidentiary rulings for abuse of discretion." *United States v. Kaplan*, 490 F.3d 110, 120 (2d Cir. 2007).

Rule 807 permits the introduction of hearsay evidence that is not otherwise covered by Rules 803 and 804, so long as certain criteria of trustworthiness are met. We have stated that hearsay evidence can be considered trustworthy—and thus admissible under Rule 807—if the speaker of the hearsay statement does not suffer from one of the "four classic hearsay dangers." *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 233 (2d Cir. 1999). They are: "(1) insincerity, (2) faulty perception, (3) faulty memory and (4) faulty narration." *Id.* at 232. Although the "hearsay statement need not be free from all four categories of risk to be admitted under Rule 807," courts should be mindful of these risks when "deciding whether evidence is sufficiently trustworthy to be admitted." *Id.* at 233.

Samia contends that several hearsay statements that he sought to introduce were wrongly excluded by the District Court. Specifically, he points to statements made by six witnesses in the Philippines, among them: statements made in 2012 to local law enforcement officers by at least two of the witnesses in which they described their perceptions of the Lee murder suspects; sketches made in 2012 by local law enforcement based on those statements; and statements made in 2015 by all of the witnesses in response to a photo array that included photos of Samia and Stillwell. Samia contends that these statements and sketches should have been introduced because they are trustworthy and exculpatory. Excluding them, he argues, was an abuse of discretion, especially in light of his Sixth Amendment right "to present witnesses in his own defense." *Taylor v. Illinois*, 484 U.S. 400, 408 (1988).

We disagree. The District Court reasonably concluded that the risk of faulty perception, which pervaded the hearsay statements, could not be mitigated without cross-examination. As the District Court observed, both suspects went out of their way to conceal their identifying features, so that any witness descriptions—even just days after the murder in 2012—would necessarily be based on limited observations. This risk of faulty perception was compounded by the risk of faulty memory, which increased with the passage of time, so that statements provided three years after the murder were less reliable. Taken together, these risks made the hearsay that Samia tried to introduce under Rule 807 untrustworthy. Especially given that other evidence did not corroborate the proffered statements, it was reasonable for the District Court to exclude the statements altogether. Accordingly, the District Court did not abuse its discretion.

Samia's invocation of his Sixth Amendment right to present witnesses warrants no different conclusion because that right "is subject to reasonable restrictions" including "fairness and reliability in the ascertainment of guilt and innocence." *Wade v. Mantello*, 333 F.3d 51, 58 (2d Cir. 2008) (internal quotation marks omitted).

### B. Use of Co-Defendant's Confession

Samia next argues that his right of confrontation was violated by the District Court's decision to admit a non-testifying co-defendant's confession in a joint trial, even in redacted form. The parties disagree over whether Samia sufficiently preserved this issue for appeal. We need not resolve that dispute because Samia's challenge fails even under *de novo* review. *See United States v. Jass*, 569 F.3d 47, 55 (2d Cir. 2009).

In *Bruton v. United States*, 391 U.S 123 (1968), the Supreme Court held that in joint trials, the admission of a non-testifying defendant's confession incriminating a co-defendant without the opportunity for cross-examination is prejudicial error in violation of the Sixth Amendment's Confrontation Clause.

Prejudice from such a confession may be avoided, however, by a "non-obvious redaction of . . . [the] confession to eliminate any references to the defendant." *United States v. Lyle,* 919 F.3d 716, 733 (2d Cir. 2019); *see Gray v. Maryland,* 523 U.S. 185, 195–97 (1998); *Richardson v. Marsh,* 481 U.S. 200, 208–09 (1987). To determine whether a modification to the confession avoids *Bruton* error, a court considers "whether the neutral allusion [to the co-defendant] sufficiently conceals the fact of explicit identification to eliminate the overwhelming probability that a jury hearing the confession at a joint trial will not be able to follow an appropriate limiting instruction." *Jass,* 569 F.3d at 61. In making this determination, a court views the redacted statement "separate and apart from any other evidence admitted at trial." *Lyle,* 919 F.3d at 733.

Samia contends that the redactions to Stillwell's confession were insufficient because jurors would immediately infer that Stillwell's references to "another person" referred to Samia himself.

The argument is defeated by precedent. "We have consistently held that the introduction of a co-defendant's confession with the defendant's name replaced by a neutral noun or pronoun does not violate *Bruton.*" *Id.* at 733. The Drug Enforcement Agency agent here, through whom the redacted confession was introduced, used such neutral terms, recounting Stillwell's confession that he was with "somebody else over there" and that he lived with "the other person." J.A. 516. The agent also recounted Stillwell's description of a "time when the other person he was with pulled the trigger on that woman in a van that he and Mr. Stillwell was driving." *Id.* Viewed "separate and apart from any other evidence," *Lyle,* 919 F.3d at 733, these statements do not "explicit[ly] identif[y]" Samia, *Jass,* 569 F.3d at 61. Nor is the use of neutral language to replace explicit identification so awkward or obvious as to tip off the jury that a redaction has occurred. Rather, a juror listening to these statements could have concluded that several other people may have been Stillwell's co-conspirator.

Samia also contends that the District Court erred by permitting the Government to ask—and the Agent to answer—questions about "the other person." By soliciting such information about the "other person," Samia contends, the Government directly counteracted the effectiveness of the neutrally worded redaction.

The record does not support that argument. The challenged questioning elicited testimony that the person Stillwell was with carried a firearm with a silencer. That additional information, considered by itself and separate from other evidence, did not make it more likely that Stillwell's confession implicated Samia.

Accordingly, there was no error in admitting Stillwell's confession in its modified form.

IV: Stillwell's Challenges

*A. Denial of Rule 29 Motion*

Stillwell challenges the District Court's denial of his Rule 29 motion for a judgment of acquittal. "We review the grant or denial of a judgment of acquittal de novo, and we apply the same standards governing the sufficiency of the evidence as are applied by a district court." *United States v. Temple*, 447 F.3d 130, 136 (2d Cir. 2006). Specifically, we must "determine whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Put another way . . . [we] may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *Id.* at 136 (internal quotation marks omitted); *see also Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979).

"The high degree of deference we afford to a jury verdict is especially important when reviewing a conviction of conspiracy," because "a conspiracy by its nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel." *United States v. Anderson*, 747 F.3d 51, 72–73 (2d Cir. 2014) (internal quotation marks omitted).

Stillwell argues that the Government offered insufficient evidence to prove beyond a reasonable doubt that he joined the conspiracy to murder Catherine Lee while he was living in the United States. He is wrong. Record evidence indicates that (1) Stillwell met with Hunter in 2011; (2) Samia's April 9, 2011 email noting a "a good 2nd guy" who was "interested in going to work" for Hunter referred to Stillwell; (3) Stillwell and Samia worked together in the United States to prepare for their trip to the Philippines, including Samia assisting in procuring Stillwell's passport; (4) before leaving the United States, Stillwell used his computer to access files related to murder and acquired various items including a shoulder holster, consistent with a murderous scheme; and (5) Catherine Lee was murdered the month after Samia and Stillwell left the United States. Stillwell argues that a jury would have had to make "specious inferences" from this evidence to conclude that he joined the conspiracy while in the United States.

To the contrary, when the evidence is viewed as a whole and in the light most favorable to the Government, a rational juror could conclude that Stillwell knowingly joined in the charged murder conspiracy before leaving the United States. In sum, the evidence is not "nonexistent or so meager" that the District Court erred in denying the motion to acquit.

*B. Jury Instruction*

Stillwell next challenges the District Court's jury instruction regarding the jurisdictional element of Count Three. "The propriety of the district court's refusal to provide requested jury

9

instructions is a question of law that we review *de novo*." *United States v. Gonzalez*, 407 F.3d 118, 122 (2d Cir. 2005). As recently observed,

> [w]e review a challenged jury instruction not in isolation but as a whole to see if the entire charge delivered a correct interpretation of the law, or rather, misled the jury as to the correct legal standard or otherwise failed adequately to inform it on the applicable law. Even where charging error is identified, however, we will not reverse a conviction if the government can show harmlessness, *i.e.*, show that it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.

*United States v. Ng Lap Seng*, 934 F.3d 110, 129 (2d Cir. 2019) (internal citations and quotation marks omitted).

Stillwell argues that the District Court erred when it charged that the Government must prove that Stillwell "knowingly joined *or participated* in the conspiracy to commit murder or kidnapping in a foreign country while he was physically present in the United States." Joint App'x 976 (emphasis added). According to Stillwell, this instruction improperly invited the jury to convict him based on "participat[ion]" in the conspiracy after his return to the United States. It was to avoid this concern, Stillwell argues that he asked for an instruction, applicable only to him, that the jury needed to find that he "joined"—not that he "participated"—in the conspiracy prior to leaving the United States.

We find the jury instruction given adequate and not misleading. There was no risk that the jury would convict Stillwell of the conspiracy count based on participation after his return to the United States because, as he concedes, there was no evidence of any post-return participation. Certainly, the Government did not urge a guilty verdict on that theory. Thus, on the trial evidence the jury's guilty verdict can only be based on its finding that Stillwell joined or participated in the conspiracy before departing the United States—exactly what Stillwell claims was required by law.

### C. *Evidentiary Rulings*

Stillwell finally challenges several evidentiary rulings made by the District Court.

(i)     Vamvakias Testimony

First, Stillwell argues that testimony of Timothy Vamvakias ("Vamvakias") regarding a phone conversation with Hunter in 2011 should have been excluded as more prejudicial than probative under Rule 403 of the Federal Rules of Evidence. We review challenges to a district court's ruling under Rule 403 for abuse of discretion. We accord "great deference to the district court's assessment of the relevancy and unfair prejudice of proffered evidence, mindful that it sees the witnesses, the parties, the jurors, and the attorneys, and is thus in a superior position to evaluate the likely impact of the evidence." *United States v. Quinones*, 511 F.3d 289, 310 (2d Cir. 2007) (internal

10

quotation marks omitted). Where a "district court has conscientiously balanced the proffered evidence's probative value with the risk for prejudice, its conclusion will be disturbed only if it is arbitrary or irrational." *United States v. Awadallah*, 436 F.3d 125, 131 (2d Cir. 2006).

Stillwell submits that Vamvakias's testimony was minimally probative and highly prejudicial because Vamvakias could not confirm the ultimate fact of Stillwell's knowledge of the conspiracy before his trip to the Philippines. Stillwell argues that, as a result, such testimony could be probative only if the jury made several "specious inferences," and that in introducing it, the District Court abused its discretion. Stillwell Br. 45.

We disagree. The evidence supplied by Vamvakias's testimony—that Hunter was in the United States in 2011 and that Hunter said he was planning to travel to "Carolina" to meet with Samia "and his guy"—is clearly relevant to the question of whether Hunter, Samia, and Stillwell were participating in the conspiracy at that time. Joint App'x 768. The District Court's decision to admit the evidence occurred after "conscientious[] balanc[ing]" and was not "arbitrary or irrational." *Awadallah*, 436 F.3d at 131.

(ii)     LeRoux Testimony

Next, Stillwell challenges the District Court's failure *sua sponte* to reconsider certain limitations on the cross-examination of Paul LeRoux ("LeRoux"). Stillwell argues that, upon learning that, on "the eve of trial," LeRoux had recanted certain statements that exculpated Stillwell as to the jurisdiction element, the District Court should have revoked an agreement between the parties that prevented the defense from fully explaining LeRoux's bias. Stillwell and the Government disagree on the standard of review on this issue. We need not resolve this dispute because the District Court did not abuse its discretion, much less plainly err.

The District Court was not required *sua sponte* to revoke the parties' earlier agreement on the scope of cross-examination. In any event, the limitation was reasonable. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (explaining that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination"); *Cameron v. City of New York*, 598 F.3d 50, 62 (2d Cir. 2010) (explaining that "witnesses may not present testimony in the form of legal conclusions"). Stillwell's argument that he was prevented from sufficiently questioning LeRoux about bias is not supported by the record. The District Court permitted extensive questioning about LeRoux's motives, often over the Government's objections. Stillwell was allowed to ask, among other things, about LeRoux's "work[] with the government," the timing of his recantation, and whether LeRoux "understood that the government had an interest in having [him] disavow what [he] had previously told them back in 2015." Joint App'x 620–22. In sum, the District Court did not err, much less plainly err or abuse its discretion.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the District Court's judgments and order with respect to Count Three for Hunter and Counts Three and Five for both Samia and Stillwell. However, by agreement of the Government, we **VACATE** the convictions of Defendants with respect to Counts One, Two, and Four and we **REMAND** the cause to the District Court for resentencing upon consideration of this decision.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court